IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| JESS T. LAMMERS,<br><br>Plaintiff,<br><br>vs.<br><br>AG VALLEY COOPERATIVE NON-STOCK,<br><br>Defendant. | 8:21-CV-354<br><br>MEMORANDUM AND ORDER |

This matter is before the Court on defendant Ag Valley Cooperative Non-Stock's motion for summary judgment (filing 39) in this employment discrimination action brought against it by a former employee, Jess Lammers. The Court will grant Ag Valley's motion and dismiss Lammers' complaint.

BACKGROUND

Ag Valley is an agricultural co-op in North Platte, Nebraska. Filing 40 at 6.[1] Lammers was hired by Ag Valley as a "Commercial Custom Operator" in

[1] Pursuant to NECivR 56.1 (2021), a party moving for summary judgment must include in its brief a statement of material facts about which the movant contends there is no dispute, and the party opposing summary judgment must include in its brief a concise response to that statement of facts, noting any disagreement. Properly referenced material facts in the movant's statement are considered admitted unless controverted in the opposing party's response. NECivR 56.1(b)(1)(B). Lammers' statement of "Disputed Material Facts," filing 47 at 2-3, does not, so far as the Court can tell, comply with this Court's requirements for disputing a movant's statement of material facts. Accordingly, Ag Valley's statement of undisputed material facts is considered admitted. *See Beck v. Skon*, 253 F.3d 330, 333 (8th

January 2020. Filing 40 at 6.[2] His job duties included operating and maintaining heavy equipment and applying chemicals. Filing 41-1 at 7. Lammers informed Ag Valley of a physical disability that, among other things, limited his lifting ability and prevented him from getting an interstate Commercial Driver's License ("CDL"). Filing 40 at 6. Ag Valley accommodated that disability by not requiring Lammers to get a CDL or lift anything he was unable to lift. Filing 40 at 6. However, after Lammers' March 2020 performance evaluation, he was asked to "[l]ook into obtaining an in-state CDL because of need not to have a medically [sic] card." Filing 40 at 7; filing 41-2 at 4.[3] He didn't obtain a CDL before being fired. Filing 40 at 7.

On April 30, 2020, Lammers was arrested at Ag Valley's North Platte facility. Filing 40 at 7. Lammers' supervisor was told by the Nebraska State Patrol that Lammers had been arrested for making terroristic threats against the Attorney General and others, including lawyers, judges, and police. Filing 40 at 7. Lammers' supervisor also received screenshots of Facebook posts which appeared to support those allegations. Filing 40 at 7; filing 41-4. While Lammers was still there, handcuffed and in police custody, he was fired. Filing 40 at 8. A letter dated the next day formally told Lammers that he'd been fired effective April 30 "due to [his] recent arrest which violates our code of conduct

---

Cir. 2001). For the sake of completeness, however, the Court also notes that Ag Valley's statement of facts is well-supported by the evidence.

[2] Lammers questions who hired him, claiming he was hired through an "independent 3rd party head hunter," filing 47 at 6, but it's not clear why that matters. It's not disputed that Lammers worked for Ag Valley—indeed, that's an essential element of his claims.

[3] Lammers asserts Ag Valley reneged on their original agreement that Lammers would not be required to have a CDL of any kind. Filing 47 at 7. But Lammers isn't suing Ag Valley for breach of contract—and as will be explained below, this wasn't an ADA violation, regardless of whether it was contrary to any agreement between Lammers and Ag Valley.

policy." Filing 40 at 8; filing 41-5.

Lammers sued Ag Valley alleging unlawful termination. Filing 1-1. His operative amended complaint primarily alleges that his termination violated the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq*. Filing 23.

STANDARD OF REVIEW

Summary judgment is proper if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(a). The movant bears the initial responsibility of informing the Court of the basis for the motion, and must identify those portions of the record which the movant believes demonstrate the absence of a genuine issue of material fact. *Torgerson v. City of Rochester*, 643 F.3d 1031, 1042 (8th Cir. 2011) (en banc). If the movant does so, the nonmovant must respond by submitting evidentiary materials that set out specific facts showing that there is a genuine issue for trial. *Id.*

On a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts. *Id.* Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the evidence are jury functions, not those of a judge. *Id.* But the nonmovant must do more than simply show that there is some metaphysical doubt as to the material facts. *Id.* In order to show that disputed facts are material, the party opposing summary judgment must cite to the relevant substantive law in identifying facts that might affect the outcome of the suit. *Quinn v. St. Louis Cty.*, 653 F.3d 745, 751 (8th Cir. 2011). The mere existence of a scintilla of evidence in support of the nonmovant's position will be insufficient; there must be evidence on which the jury could conceivably find for the nonmovant. *Barber v. C1 Truck Driver Training, LLC*, 656 F.3d 782, 791-92 (8th Cir. 2011). Where the record taken as a whole could

not lead a rational trier of fact to find for the nonmoving party, there is no genuine issue for trial. *Torgerson*, 643 F.3d at 1042.

## DISCUSSION

As noted above, Lammers' complaint primarily asserts a claim under the ADA. *See* filing 23 at 1. Lammers also alleged claims under 42 U.S.C. § 1983, based on purported violation of his constitutional rights. *See* filing 23. However, Lammers now agrees that those claims should be dismissed, because Ag Valley isn't a state actor. Filing 46 at 2.

The complaint further contains a number of allegations relating to Lammers' dispute with the State of Nebraska and others regarding child support. *See* filing 23, *passim*; *see generally Ott v. Lammers*, No. A-22-755, 2023 WL 4881245 (Neb. Ct. App. Aug. 1, 2023). His summary judgment brief goes further, complaining about the cause and manner of his arrest. *See* filing 47 at 10-12. But as best the Court can tell, those allegations don't support a claim against Ag Valley. Whatever disagreements Lammers may have with other entities or agencies, the only parties to this case are Lammers and Ag Valley, and Ag Valley's part in all of this was merely as Lammers' employer. Allegations not made against Ag Valley, not arising out of that employment relationship, aren't relevant *in this case*.

Accordingly, the Court's focus is on whether Lammers has sufficient evidence to sustain an ADA claim against Ag Valley.[4] A party may prove intentional discrimination under the ADA either by direct or indirect evidence.

---

[4] Lammers also argues, filing 47 at 7, that he alleged a claim under the Nebraska Fair Employment Practices Act, Neb. Rev. Stat. § 48-1101 *et seq.*—but that claim is effectively the same as an ADA claim, and the Court's reasoning applies to any NFEPA claim as well. *See Ryan v. Cap. Contractors, Inc.*, 679 F.3d 772, 777 n.3 (8th Cir. 2012).

*Lipp v. Cargill Meat Sols. Corp.*, 911 F.3d 537, 543 (8th Cir. 2018). Direct evidence includes evidence of conduct or statements by persons involved in the decisionmaking process that may be viewed as directly reflecting the alleged discriminatory attitude, where it is sufficient to support an inference that discriminatory attitude more likely than not was a motivating factor. *Id.* There is no direct evidence of discrimination here, so the Court turns to indirect evidence.

Where a plaintiff must rely on indirect evidence to prove intentional discrimination under the ADA, the Court applies the burden-shifting framework provided in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Lipp*, 911 F.3d at 544.

> Under the *McDonnell Douglas* framework, the plaintiff must first establish a prima facie case of discrimination by demonstrating (1) that the plaintiff was disabled within the meaning of the ADA; (2) that the plaintiff was qualified to perform the essential functions of the job with or without a reasonable accommodation; and (3) a causal connection between an adverse employment action and the disability. If the plaintiff succeeds, the burden of production then shifts to the employer to show a legitimate, nondiscriminatory reason for the adverse action. The burden then returns to the plaintiff to show that the employer's proffered reason was a pretext for discrimination.

*Id*. Here, Ag Valley assumes for purposes of summary judgment that Lammers was disabled and was a qualified individual with a disability, satisfying the first two elements of his prima facie case. Filing 40 at 11. But Ag Valley argues that Lammers has no evidence of causation, and even if he did he couldn't show

that Ag Valley's proffered reason for firing him was pretextual. Filing 40 at 11-13. The Court agrees on both points.

First, the only evidence Lammers has to suggest causation is the goal set for him in his March 2020 performance review, to look into an "in-state CDL." Lammers contends that "placing the CDL requirement in an employee review began the process of constructive discharge" in violation of the ADA. Filing 41-1 at 12. Lammers testified that he was unable to obtain a CDL because of prescription medication he takes related to his disability. Filing 41-1 at 13.

But there's nothing to suggest, contrary to Lammers' implication, that an in-state CDL was a "requirement." Rather, "look[ing] into" one was a "goal" for 2020, along with developing his "sprayer skills" and decreasing the repair bills on his machine. Filing 41-2 at 4. Lammers was also fired well before he could be said to have failed to meet that goal for 2020—and he was fired just hours after being given keys to the North Platte facility, negating any inference that his termination later that day had been planned. A temporal connection can demonstrate a causal link between an adverse employment action and the employee's disability, *see E.E.O.C. v. Prod. Fabricators, Inc.*, 763 F.3d 963, 969 (8th Cir. 2014)—but here, Ag Valley had known about Lammers' disability since he was hired. There's simply nothing other than speculation to connect Lammers' disability to his termination.[5]

---

[5] Lammers suggests that putting that goal on his performance evaluation in the first place was an adverse employment action. Filing 47 at 14. But an "adverse employment action" is "a tangible change in working conditions that produces a material employment disadvantage." *Sellers v. Deere & Co.*, 791 F.3d 938, 942 (8th Cir. 2015). To be "adverse" the action need not always involve termination or even a decrease in benefits or pay—but not everything that makes an employee unhappy is an actionable adverse action. *Id.* And even a *negative* performance evaluation isn't, by itself, an adverse employment action. *Id.* at 944 n.5.

And even if Lammers could make his prima facie case, Ag Valley has articulated a legitimate, nondiscriminatory reason for his termination that he cannot rebut. Lammers' arrest, and the Facebook posts attributed to him, would be disturbing to any employer.[6] Lammers argues that Ag Valley was required to wait until the criminal charges against him were concluded before acting on them. *See* filing 47 at 15. But the constitutional presumption of innocence, *see In re Winship*, 397 U.S. 358, 363 (1970), doesn't apply in the employment context, *cf. Post v. Harper*, 980 F.2d 491, 494-95 (8th Cir. 1992). Instead, the "honest belief" doctrine protects employers who honestly believed the asserted grounds for termination at the time. *See Nelson v. Lake Elmo Bank*, 75 F.4th 932, 938-39 (8th Cir. 2023). The question isn't, in other words, whether Ag Valley was factually correct—just whether Ag Valley honestly believed the grounds for termination at the time. *See id*. There's nothing in the record here to suggest that Ag Valley didn't believe the charges against Lammers—after all, he was fired on the spot after his arrest.[7]

---

Simply put, the goal included in Lammers' performance evaluation wasn't an adverse employment action—his claim depends on connecting his termination to his disability.

[6] Lammers doesn't admit making the Facebook posts, and argues they're hearsay. Filing 47 at 11. But they're not: They're being offered for their effect on the reader, not the truth of the matter asserted. *See* Fed. R. Evid. 801(c)(2).

[7] An internal email sent to Ag Valley's HR director by Lammers' supervisor a few days after Lammers' firing listed a number of incidents leading to up to his termination, including excessive reimbursement requests after work travel, use of profanity, failure to turn in paperwork, "taking the machines through the center of town even after being told multiple times not to," belligerence, and arriving late and leaving early. Filing 41-3. In that telling, Lammers' arrest and reported Facebook posts were the last straw leading to termination. Lammers disputes those incidents, and points to other incidents involving other employees who were apparently not fired. *See* filing 47 at 7-8. *But the real issue here is the arrest and*

That leaves Lammers to establish that Ag Valley's proffered reason for termination was pretextual—which requires more than merely discrediting an Ag Valley's asserted reasoning. *Id.* at 938. Instead, Lammers must show that the circumstances permit a reasonable inference to be drawn that the real reason Ag Valley terminated him was because of his disability. *Id.*

One way in which an employee can prove pretext is by showing that the employer treated similarly-situated employees in a disparate manner. *See id.* But Lammers has the burden to show that the identified co-workers were similarly situated in all relevant respects—a "rigorous" standard at the pretext stage. *Id.* at 939. And where an employer has terminated a plaintiff due to acts of the plaintiff, the plaintiff has the burden of showing that he and the more favorably treated employee's acts were of comparable seriousness. *Id.*

Lammers hasn't met that burden here. He asserts that "multiple Ag Valley employees have been arrested for misdemeanor and felony offenses and have been allowed to retain employment, or receive a promotion." Filing 47 at 14. He identifies two.[8]

One alleged comparator was apparently required to register as a sex offender for 15 years, allegedly having been "charged with a felony but disseminated [sic] as a misdemeanor." Filing 45 at 1; filing 45-4. That's

---

*Facebook posts, which were the stated basis for Lammers' termination both verbally and in writing, and are the only grounds for termination relied upon here.* Lammers' supervisor may have elaborated on Lammers' performance in reporting to the HR director, but his position and that of Ag Valley have been consistent: The incident precipitating termination—in other words, the legitimate nondiscriminatory reason for termination—was Lammers' arrest and alleged threats. *See Amini v. City of Minneapolis*, 643 F.3d 1068, 1076 (8th Cir. 2011).

[8] Lammers also claims that "numerous" unidentified co-workers have felony DUIs. Filing 45 at 1. Even if unnamed co-workers could somehow show pretext, DUI charges aren't comparable to those brought against Lammers.

consistent with the Nebraska Sex Offender Registration Act, if the sex offender was convicted of a registrable offense "not punishable by imprisonment for more than one year." Neb. Rev. Stat. § 29-405(b)(i). That already differentiates the charge from terroristic threats, a Class IIIA felony punishable by up to three years' imprisonment. *See* Neb. Rev. Stat. § 28-311.01; *see also* Neb. Rev. Stat. § 28-105(1). Nor is there any other information about the underlying registrable offense—and those can vary widely in substance and seriousness. *See* Neb. Rev. Stat. § 29-4003. And there's no information about when such an offense, whatever it was, might have been committed. Taken together, that falls well short of identifying a similarly situated co-worker.

Lammers' second try fares no better, because it appears to be a misidentification. Lammers claims that a co-worker was, at some point, "sentenced to five years probation and 90 days in jail on one count of first-degree sexual assault." Filing 45-3. But the person sentenced for sexual assault was male, according to the news report Lammers provides as evidence. Filing 45-3. His co-worker, however, is female, and has never been arrested for anything of the kind. Filing 45-5; filing 49-1. The only reasonable inference from the evidence before the Court is that Lammers has misidentified a person with a relatively common name.

In sum, Lammers has failed to show that similarly situated co-workers were treated differently from him, and has a result has failed to show that Ag Valley's stated reason for terminating him was pretextual.

## CONCLUSION

It is well-established that federal courts do not sit as a super-personnel department that reexamines an entity's business decisions. *Main v. Ozark Health, Inc.*, 959 F.3d 319, 325 (8th Cir. 2020). A plaintiff cannot prove discrimination simply by proving that an employer's reason for firing him was

erroneous, unwise, or even unfair. *Id.*

It's obvious that Lammers believes he's been treated unfairly by a number of people. Maybe he was—it's not this Court's place to say, at least in this lawsuit. The only question presented *in this lawsuit* is whether Lammers has evidence to show that Ag Valley fired him for his disability, as opposed for misconduct that it—rightly or wrongly—believed Lammers committed. The only reasonable inference from the evidence before the Court is that Lammers was fired because of his arrest and alleged threatening behavior, not his disability. Accordingly,

IT IS ORDERED:

1. The plaintiff's motion to voluntarily dismiss his § 1983 claims (filing 46) is granted.

2. The defendant's motion for summary judgment (filing 39) is granted.

3. The plaintiff's complaint is dismissed.

4. A separate judgment will be entered.

Dated this 27th day of September, 2023.

BY THE COURT:

John M. Gerrard
Senior United States District Judge